## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

**ALISHA ASKEW,**  **PLAINTIFFS**
**INDIVIDUALLY AND ON BEHALF OF THOSE**
**SIMILARLY SITUATED, ET AL.**

v.   No. 5:19-cv-24-BJB

**INTER-CONTINENTAL HOTELS**  **DEFENDANTS**
**CORPORATION, ET AL.**

\* \* \* \* \*

### OPINION & ORDER

Alisha Askew, Deborah Williams, and Shavonna Askew are or were bartenders who earned a combination of hourly wages and tips working at Inter-Continental Hotels, Burger Theory, and other restaurants owned or operated by LinGate Hospitality or Big Blue Bar. These wages were less than minimum wage, according to the bartenders, who sued their former employers under the Fair Labor Standards Act. Complaint (DN 1) ¶¶ 1–14. They sued not only on their own behalf, but also as representatives of a putative class of similarly situated employees who were paid according to a "tip credit" rate. ¶ 22. Under the unusual conditional-certification process courts have utilized for "collective actions" under the FLSA,[1] the Court conditionally certified the class. DN 34. Plaintiffs' counsel then sent a Court-approved notice to putative class members. DN 46. Fourteen opted in as plaintiffs. *See* DNs 47–54; 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing ….").

The three named Plaintiffs then filed two stipulated dismissals. The first stipulation voluntarily dismisses without prejudice six opt-in Plaintiffs because "they were not employed by Defendants in a tipped employee capacity and paid at or above minimum wage." DN 55 at 1. The second stipulation "notice[s] the dismissal of this matter with prejudice" and without explanation. DN 56 at 1.

---

[1] *See generally Holder v. A&L Home Care & Training Center, LLC*, 552 F. Supp. 3d 731, 746–47 (S.D. Ohio 2021) (certifying interlocutory appeal of challenge to typical two-step conditional-certification process); *Hall v. Gannett Co.*, No. 3:19-cv-296, 2021 WL 231310, at *2 (W.D. Ky. Jan. 22, 2021) (describing the two-step process and its relationship to the statutory text and appellate precedent); *Swales v. KLLM Transport Services, L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021) (rejecting the two-step approach inaugurated by *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)).

1

Federal Rule of Civil Procedure 41, cited in both stipulations, allows a plaintiff, subject to "any applicable federal statute," to "dismiss an action without a court order by filing … a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(ii). Ordinarily, a stipulation signed by all parties terminates the action and doesn't require the district court's consent. *See* Charles Alan Wright & Arthur R. Miller, 9 *Federal Practice & Procedure* § 2363 (4th ed. 2022). But an "applicable federal statute" may change the parties' authority to dismiss and require court input before dismissal. FED. R. CIV. P. 41(a)(1)(A); *see also* Wright & Miller § 2363 at n. 15 (discussing statutes that at least arguably require court approval for dismissal).

The Plaintiffs' notices of dismissal do not expressly request court approval, but implicitly raise that question: does the FLSA qualify as an "applicable federal statute" that limits the parties' ability to dismiss under Rule 41(a)(1)(A)(ii)? If it does, then any dismissal would be valid only if it complied with the FLSA requirements discussed below. But because the FLSA's text doesn't require court approval, it is not an "applicable federal statute" under Rule 41(a)(1)(A), and the Court acknowledges the dismissals based on the Plaintiffs' filings under Rule 41 alone.

## I.

Interpreting the Federal Rules, like a federal statute, begins with the text. *Pavelic & LeFlore v. Marvel Ent. Group*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning."). Rule 41(a) authorizes a plaintiff to "dismiss an action without a court order" at any point with defendants' consent (subsection (a)(1)(A)(i)) and unilaterally before service of "an answer or a motion for summary judgment" (subsection (a)(1)(A)(ii)). The Rule subjects this authority to dismiss, however, "to Rules 23(e), 23.1(c), 23.2, and 66 and"—as relevant here—"any applicable federal statute."

The Rule does not itself identify any such "applicable federal statute." But two examples of laws that plainly require judicial consent before dismissal—8 U.S.C. § 164 (now § 1329) and 31 U.S.C. § 232 (now § 3730)—are easy to find because they're included in the 1937 Notes of the Advisory Committee on Rules. These "[p]rovisions regarding dismissal … are preserved by" Rule 41(a)(1), according to the committee note. Notably, these provisions are both preexisting and explicit in the statutory text:

> No suit or proceeding for a violation of any of the provisions of this subchapter [immigration violations] shall be settled, compromised, or discontinued *without the consent of the court* in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor.

8 U.S.C. § 1329 (emphasis added).

2

> A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed *only if the court and the Attorney General give written consent* to the dismissal and their reasons for consenting.

31 U.S.C. § 3730(b)(1) (emphasis added). Although the Committee Notes contemplate the possibility of other "such statutes," no additional laws are listed in the Notes or have been added, even though Rule 41(a)(1) has been amended regarding judicial approval of class-action settlements. *See* FED. R. CIV. P. 41 advisory committee's note to 1946 and 2007 amendments (regarding subsection (a)).

The specific Federal Rules enumerated in Rule 41, moreover, contain similar express language. Rule 23(e) requires "the court's approval" to "settl[e], voluntarily dismis[s], or compromis[e]" the "claims, issues, or defenses of a certified class." Rule 23.1(c), which governs derivative actions, provides for settlement, voluntary dismissal, or compromise "only with the court's approval." FED. R. CIV. P. 23(e). Rule 23.2 provides that "the procedure for settlement, voluntary dismissal, or compromise" of "an action brought by or against the members of an unincorporated association … must correspond with the procedure in Rule 23(e)"—which requires court approval. FED. R. CIV. P. 23.2. Finally, Rule 66 provides that "[a]n action in which a receiver has been appointed may be dismissed only by court order." FED. R. CIV. P. 66. Like the two statutes discussed above, these Rules leave little doubt that court approval is necessary.

The FLSA's text, by contrast, is silent on this matter. Courts that condition approval of FLSA settlements on their own consent have relied on § 216, the FLSA's penalties provision. *E.g.*, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982) (citing §§ 216(b) & 216(c)). But nothing in these sections suggest a court must approve a settlement. As to § 216(b), the only portion relevant to judicial authority (italicized below) concerns awarding fees and costs, not approving settlements:

> An action to recover the liability prescribed in the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. *The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.* The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff to any such action,

3

>   shall terminate upon the filing of a complaint by the Secretary of Labor
>   ….

And subsection (c) doesn't mention judicial authority at all. Rather, it speaks to the authority of the Secretary of Labor, who may:

>   supervise the payment of the unpaid minimum wages or the unpaid overtime compensation owing to any employee or employees under section 206 or section 207 of this title, and the agreement of any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional equal amount as liquidated damages.

Why would Congress bother to specify the Secretary's role in distribution after a resolution, but omit the district court's (purported) role of approving a settlement in the first place? Isn't that at least equally important as a matter of judicial administration or policy—and even more so as a matter of statutory interpretation, given the default found in Rule 41 that any judicial specification would need to overcome? And how strange it would be to specify that an employee can waive other FLSA rights without mentioning that the agreement has no effect absent court approval. Indeed, courts usually presume "that a matter not covered is not covered." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012).

And Congress supplied additional rules for settlements when it amended the FLSA through the Portal-to-Portal Act of 1947. *See Martinez v. Bohls Bearing Equip. Co.*, 361 F. Supp. 2d 608, 623 (W.D. Tex. 2005) (discussing amendment history). 29 U.S.C. § 253(a) gives parties the authority to settle claims "accrued prior to May 14, 1947" in any action, "whether instituted prior to or on or after May 14, 1947," so long as "there exists a bona fide dispute as to the amount payable by the employer to his employee." Subsection (b) allows the same for FLSA's liquidated damages, also subject to the same time limitations. Subsection (c) explains that "[a]ny such compromise or waiver … shall, according to the terms thereof, be a complete satisfaction of such cause of action and a complete bar to any action." Again absent from this subsection? Any mention of court approval or oversight.

If Congress, presumably out of concern over the adequacy of plaintiffs' representation, wishes to limit the voluntariness of a dismissal, it knows how to do so. *See generally* Gretchen L. Forney, Note, *Qui Tam Suits: Defining the Rights and Roles of the Government and the Relator Under the False Claims Act*, 82 MINN. L. REV. 1357, 1389–90 (1998) ("[C]ourts have the duty to ensure that qui tam plaintiffs do not manipulate suits in a way to reduce the government's settlement."). The two statutes mentioned in the Advisory Committee Note—8 U.S.C. § 1329 and 31 U.S.C. § 3730—tell us that much. The same is true of the work of the Rules Advisory

Committee, as authorized by the Supreme Court and Congress, which has identified express exceptions in the text of Rule 41(a) itself in the class-action and receivership contexts, where concerns regarding agency problems exceed those ordinarily present where parties are directly represented by counsel. But even under the quasi-class-action process courts have adapted to the FLSA, plaintiffs opt in to representation by counsel, *see, e.g.*, *Swales*, 985 F.3d at 435, and are not bound by a judgment absent that decision to opt in, *contra Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). So it is not terribly surprising to find the FLSA omitted from the text of Rule 41.

And as the Fifth Circuit has recognized, the FLSA itself contains no language requiring judicial approval of settlement agreements. *See Martin v. Spring Break '83 Prods., L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012) (enforcing FLSA settlement agreement "predicated on a bona fide dispute about time worked" despite lack of court or DOL approval). The statute mentions the court only in the very different context of attorney fees and costs. Although the statute expressly cites the Secretary's supervisory role and the employee's waivers, it doesn't condition the validity of an employee's dismissal on the court's approval of an underlying settlement. The Portal-to-Portal Act, moreover, explicitly addressed specific FLSA settlements, yet made no mention of court oversight. In short, nothing in the FLSA's text or context renders it an "applicable federal statute" for Rule 41 purposes. In fact, many aspects of its text and context suggest Congress did *not* intend to override Rule 41's default that plaintiffs may dismiss suits regardless of what a judge thinks about that move.

\* \* \*

Other courts, however, have disagreed with this interpretation of the statutory text and context. Although the Sixth Circuit hasn't reached this issue, at least two other circuit courts and a district court within the Sixth Circuit have taken the view that judicial approval of an FLSA dismissal is required. In *Lynn's Food Stores*, the district court reviewed and rejected an out-of-court agreement "on the grounds that the settlements violated the provisions and policies of the FLSA." 679 F.2d at 1352. The question arose in an unusual procedural posture. An employer settled unasserted employee-wage claims out of court and sought a declaratory judgment against the Department of Labor stating the employer was free from FLSA liability. The district court denied the declaratory judgment because it rejected the validity of the underlying agreement—even though these claims never reached federal court. *Id.* at 1352–53. The Eleventh Circuit affirmed and explained that only two methods exist to settle FLSA claims:

> [U]nder section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them….
>
> The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer

> under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

*Id.* at 1352–53 (footnotes and citations omitted). Outside this context, the court of appeals expressed skepticism about settlements because employees may not "be represented by an attorney who can protect their rights under the statute." *Id.* at 1354. Pivoting from attorney representation to judicial supervision, the Eleventh Circuit noted that no court had determined that the settlement agreement was "a fair and reasonable resolution" of the FLSA claims. *Id.* at 1355. Based on its understanding that federal wage-and-hour laws were not subject to ex ante bargaining or waiver, *id.* at 1352 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)), the court extrapolated that ex post disputes over wage-and-hour liability were susceptible to resolution through public adjudication but not private contract: "to approve an 'agreement' between an employer and employees outside of the adversarial context of a lawsuit brought by the employees would be in clear derogation of the letter and spirit of the FLSA," *id.* at 1354. *But see Martin*, 688 F.3d at 255 (distinguishing "FLSA claims predicated on a bona fide dispute about time worked" from "compromise of guaranteed FLSA substantive rights themselves" (citing *Brooklyn Savings Bank*, 324 U.S. at 714)).

Although not strictly relevant to the Eleventh Circuit's doctrinal analysis, the *Lynn's Food Stores* opinion expressed concern with the legitimacy of the underlying employee release on basic contract-law grounds. The employees, according to the court, were unaware of the Labor Department's own determinations under the FLSA, did not consult attorneys, were pressured and misled by their employee, and in some instances couldn't speak English. 679 F.2d at 1354–55. Yet the court expressed its holdings in statutory rather than factual or contractual terms. "[T]here is only one context in which compromises of FLSA back wage or liquidated damage claims may be allowed: a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA." *Id.* at 1355. Nor did the court rely on the trial court's discretion to deny a declaration under the Declaratory Judgment Act, though it plainly could've. *See generally Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–96 (1942). Rather, because these workers settled before they filed suit, the Eleventh Circuit held that the agreement had no effect.

The Eleventh Circuit rested its analysis primarily on two Supreme Court precedents. *See Lynn's Food Stores*, 679 F.2d at 1353. In *D.A. Schulte, Inc. v. Gangi*, the Supreme Court held that employees couldn't waive liquidated damages in a settlement, even when a bona fide dispute of FLSA coverage existed. 328 U.S. 108, 115–16 (1946). *Gangi* closed the loop on *Brooklyn Savings Bank*, which had held that

employees could not waive liquidated damages by settlement, but left open whether a settlement of a "bona fide dispute" would fare differently. 324 U.S. at 704, 714.

From these decisions, the Eleventh Circuit concluded that "to approve an 'agreement' between an employer and employees *outside of the adversarial context of a lawsuit brought by the employees* would be in clear derogation of the letter and spirit of the FLSA." *Lynn's Food Stores*, 679 F.2d at 1354 (emphasis added). On this logic, *Lynn's Food Stores* treated a purely private settlement, reached outside the adversarial context of a formal lawsuit, as unenforceable under FLSA. That logic would just as easily bar plaintiffs who reached a resolution with their employers *after* filing suit from settling without judicial approval. This skepticism of unlitigated rights, of course, runs contrary to the ordinary presumption in this circuit and elsewhere in favor of negotiated resolution of litigated disputes. *See Lexington Ins. Co. v. Ambassador Grp. LLC*, --- F. Supp. 3d ---, 2021 WL 5854366, at *1 (W.D. Ky. Dec. 9, 2021).

The Second Circuit extended the logic of *Lynn's Food Stores* to the Rule 41(a)(1)(A) context in *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d Cir. 2015).[†] Characterizing the question as one of first impression across the circuits, the court held that the FLSA came "within Rule 41's 'applicable federal statute' exception" due to its "unique policy considerations." *Id.* at 201–02, 206 (adopting DOL's position offered by post-argument letter brief). That included the statute's "underlying purpose," which was "'to extend the frontiers of social progress by insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *Id.* at 206 (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (quoting Message of the President to Congress, May 24, 1934)). The court began its analysis with *Brooklyn Savings* and *Gangi*, which held that "that (1) employees may not waive the right to recover liquidated damages due under the FLSA; and (2) that employees may not privately settle the issue of whether an employer is covered." *Id.* at 203. Next, the court noted that the Eleventh Circuit allowed enforcement of private settlements "only if the DOL or a district court first determines that the proposed settlement 'is a fair and reasonable resolution of a bona fide dispute.'" *Id.* at 203 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). Because the same policy concerns arose in the context of a Rule 41 voluntary dismissal, the Second Circuit reasoned that *Lynn's* rule against private settlement applied there as well. *Id.* at 206.

At least one decision from the Western District of Tennessee followed *Cheeks* and rejected a stipulation of dismissal "because the parties had failed to submit the terms of the settlement or any argument on the fairness and reasonableness of the settlement." *Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1025 (W.D. Tenn.

---

[†] Even under *Cheeks*, parties could settle a case without court or DOL approval if they dismissed *without* prejudice. The Second Circuit extended "the logic of *Cheeks*," 796 F.3d at 201 n.2, to "dismissals without prejudice," *Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022).

2016). Extrapolating from *Brooklyn Savings*, *Gangi*, and an Age Discrimination in Employment Act decision from the Sixth Circuit, the court predicted that the Sixth Circuit would require court approval because FLSA and ADEA settlements presented similar concerns over unequal bargaining power. *Id.* at 1027–28 (discussing *Runyan v. Nat'l Cash Register Corp.*, 787 F.2d 1039 (6th Cir. 1986)). Other district courts have followed the same path. *See, e.g.*, *Minsterman v. S.L. Nusbaum Realty Co.*, No. 2:10-cv-303, 2011 WL 9687817, at *1 (E.D. Va. Jan. 21, 2011) (rejecting dismissal where "the parties' Order and Stipulation of Dismissal provides no information that would allow this Court to determine whether this result would be a fair and reasonable resolution of the FLSA claims"); *Bridges v. Rangers Enter. Satellite, LLC*, No. 3:20-cv-108, 2021 WL 1865228, at *1 (N.D. Miss. May 10, 2021) (court "directed the parties to show cause why the settlement should be approved" after filing of joint stipulation of dismissal with prejudice).

Where does this supposed authority supposedly come from? According to the opinion in *Steele*, not from the text of Rule 41(a), but instead from "the public policy that favors court approval of FLSA settlements." 172 F. Supp. 3d at 1028. Even assuming such a policy may be gleaned from earlier Supreme Court precedents that assigned the FLSA a generous remedial interpretation, neither *Brooklyn Savings* nor *Gangi* compel the conclusion that settling a FLSA case requires court approval. Both addressed liquidated damages: "whether the [employee's] release of all further claims and damages under the Act … is a defense to an action subsequently brought solely to recover liquidated damages," *Brooklyn Savings Bank*, 324 U.S. at 701, and whether the existence of a bona fide dispute can save a waiver of liquidated damages, *Gangi*, 328 U.S. at 116. Interpreting one aspect of the FLSA's substantive reach and remedies, however, does not control the application of Rule 41(a) to different aspects of the FLSA. "[L]aw is like a vector"—with a "stopping plac[e]"—that "has length as well as direction." Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction*, 11 HARV. J.L. & PUB. POL'Y 59, 63 (1988). That plaintiffs may not waive liquidated damages under the FLSA doesn't mean plaintiffs may not settle FLSA cases *at all* without judicial involvement. The ever-present risks of judicial immodesty should caution us to think twice before perceiving gaps left by Congress to resemble the shape of a black robe. Presumably federal labor law, like federal securities law, is not exempt from "the law of unintended consequences." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1067 (2018) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,* 547 U.S. 71, 82 (2006)).

To this precedent, the *Cheeks* decision adds only policy considerations, which ordinarily fall to the legislative branch. *See Husted v. A. Philip Randolph Institute*, 138 S. Ct. 1833, 1848 (2018) (recognizing "a question of statutory interpretation, not a question of policy"). Reading those older precedents "in light of the unique policy considerations underlying the FLSA," the court of appeals placed far greater weight on its understanding of the balance of power and resources in the labor context than it assigned to the text of Rule 41(a) and the FLSA itself. *Cheeks*, 796 F.3d at 206. "Low wage employees, even when represented … often face extenuating economic and

social circumstances and lack equal bargaining power," raising concerns that "they are more susceptible to coercion or more likely to accept unreasonable, discounted settlement offers quickly." *Id.* at 205 (quoting *Socias v. Vornado Realty, L.P.*, 297 F.R.D. 38, 40 (E.D.N.Y. 2014)). The court of appeals traced its understanding of workers' susceptibility in litigation to President Roosevelt's 1934 understanding of workers' substantive right to "a fair day's pay for a fair day's work." *Id.* at 206 (quoting *A.H. Phillips, Inc.*, 324 U.S. at 493 (quoting May 24, 1934 Message of the President to Congress)). However helpful that history may be in construing the substantive reach of the FLSA, it offers little illumination of the text of Rule 41(a).

Nor does it grapple with more foundational questions the Second Circuit's approach raises. Which remedial statutes *don't* require judicial approval for similar reasons? What are the costs—to current and future litigants—of forcing satisfied parties to keep litigating against their wishes? *See, e.g., Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368, 377 (E.D.N.Y. 2013) (many FLSA actions "are simply too small, and the employer's finances too marginal, to have the parties take further action if the Court is not satisfied with the settlement."). And on what basis would a court retain jurisdiction over a case or controversy the parties have settled and seek to dismiss without a consent decree? *Cf. Lexington Ins. Co.*, 2021 WL 5854366, at *2 (case or controversy must "persis[t] 'at all stages of review'" (quotation omitted)). Article III, the Supreme Court has explained in the specific context of FED. R. CIV. P. 41(a), presumes the opposite: "Neither the Rule nor any provision of law provides for jurisdiction of the court over disputes arising out of an agreement that produces the stipulation." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). Absent legal authority inviting the Court's intervention in a private settlement, therefore, the Court may not write its own ticket.

Faced with a statute that doesn't require court approval before dismissal, and a Rule that presumes the opposite, the Court concludes that FLSA is not an "applicable federal statute" under Rule 41(a)(1)(A) that prevents dismissal at the parties' behest.

\* \* \*

All the Plaintiffs have signaled their desire to end this litigation. Opt-in Plaintiffs Mario Smith, Cameron Braden, Elyssa Lawrence, Shannon De Lozier, Carman Hinnant, and Jared Gonzalez dismissed their claims, without prejudice, by a stipulation signed by all parties. DN 55. And the remaining parties have signed a filing indicating their agreement this case should be dismissed with prejudice. DN 56. Under Rule 41(a)(1)(A)(ii), therefore, this action stands dismissed—whether the Court likes it or not.